**UNITED STATES of America**

v.

**Vincent GIGANTE, Defendant.**

**No. CR 93–368(JBW).**

United States District Court,
E.D. New York.

July 21, 1997.

Zachary W. Carter, United States Attorney, Eastern District of New York, Bróoklyn, NY by Andrew Weissmann, George A. Stamboulidis, Daniel S. Dorsky, for U.S.

Culleton, Marinaccio, & Foglia, White Plains, NY by James J. Culleton, Michael A. Marinaccio, Philip Foglia; Steven R. Kartagener, New York City, for Defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

This case raises an issue of apparent first impression in the federal courts. A chief witness in this RICO case is too ill to testify in court. He is in the Federal Witness Protection Program, at some distance from this state so that the jury cannot be convened in his presence. It might jeopardize the safety of the witness were the defendant's full counsel staff to be present at the witness' deposition since that would reveal the witness' location and put him in serious danger from criminals against whom he has testified and provided information. Given defendant's claimed serious physical disabilities, it is conceded that he will not attend any deposition at a place convenient to the witness.

A full hearing was conducted to determine whether it is practicable for the witness to appear in person at trial. Medical reports and testimony for the government and defendant fully supported the government's contention, by clear and convincing proof, that the witness could not appear in court.

The government seeks to have the witness' testimony taken through closed circuit television. The defendant contends that this would violate his constitutional right to confrontation. The closed circuit system permits the witness to view and hear counsel and defendant, while simultaneously allowing counsel, defendant, judge and jury to view and to hear the witness. The defendant's objection is overruled.

The optimal way of conducting a trial under American practice is for the witness in person in court to face the defendant and the trier, and to be subject to immediate cross-examination in their presence. *See e.g., Maryland v. Craig,* 497 U.S. 836, 849, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666 (1990) (historic preference for in-person encounters between accused persons and their accusers). American criminal procedure, however, is pragmatic. It recognizes that this ideal condition can not be made available in every instance if there is to be an effective search for the

truth in an atmosphere protecting the defendant's needs for fairness and due process and the public's right to protection against crime. *See, e.g., Craig,* 497 U.S. 836, 850, 110 S.Ct. 3157, 3166, 111 L.Ed.2d 666 (1990) (sanctioning the use of closed circuit television to transmit testimony of a witness when "necessary to further an important public policy" and where "the reliability of the testimony is otherwise assured").

Modification of the face-to-face in-person confrontation rule is exemplified by the extensive hearsay exceptions permitting the trier to rely upon the statements made outside of court. *See, e.g.,* Fed.R.Evid. 803, 804; *White v. Illinois,* 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 742, 116 L.Ed.2d 848 (1992) (exceptions to hearsay rule recognized in Federal Rules of Evidence bear sufficient reliability to satisfy requirements of Confrontation Clause); *Lee v. Illinois,* 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986) (even when hearsay does not fall within a hearsay exception, "it may nonetheless meet Confrontation Clause reliability standards"); *United States v. Sasso,* 59 F.3d 341, 348–49 (2d Cir.1995) (incriminating hearsay statements against a defendant); *United States v. Matthews,* 20 F.3d 538, 544–545 (2d Cir.1994) (when a declarant is unavailable and his prior out-of-court statements are sufficiently reliable, admission at trial of his hearsay declarations is constitutionally permissible). Depositions of out-of-court witnesses are permitted in criminal cases. *See* Fed.R.Crim.P.15 (depositions when due to exceptional circumstances are in the interest of justice); *United States v. Donaldson,* 978 F.2d 381, 392–93 (7th Cir.1992) (permitting the government to present deposition testimony of witness who recently gave birth and had other medical complications causing her to be hospitalized the day before she was to testify at trial). Such depositions are allowed even where they are taken pursuant to continental practice where the examination is conducted by the magistrate rather than by the attorneys. *See United States v. Salim,* 664 F.Supp. 682 (E.D.N.Y.1987), *aff'd,* 855 F.2d 944 (2d Cir.1988).

Recognizing this history, the Supreme Court, effective December 1, 1996, amended Rule 43 of the Federal Rules of Civil Procedure to provide explicitly for televised presentation of testimony as follows (strike-outs indicate prior language eliminated and underlining material added):

> In ~~all~~ every trials, the testimony of witnesses shall be taken ~~orally~~ in open court, unless ~~otherwise provided by an Act of Congress or by~~ <u>a federal law,</u> these rules, the Federal Rules of Evidence, or other rules adopted by the Supreme Court <u>provide otherwise. The court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location.</u>

In the advisory committee notes to these amendments to Federal Rule of Civil Procedure 43, the appropriateness in special circumstances of testimony being transmitted from a location other than the courtroom was recognized:

> Contemporaneous transmission of testimony from a different location is permitted only on showing of good cause in compelling circumstances. The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

> The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place. Contemporaneous transmission may be better than an attempt to reschedule the trial, particularly if there is a risk that other—and perhaps more important—witnesses might not be able to be available at a later time....

No attempt is made to specify the means of transmission that may be used. Audio transmission without video images may be sufficient in some circumstances, particularly as to less important testimony. Video transmission ordinarily should be preferred when the cost is reasonable in relation to the matters in dispute, the means of the parties, and the circumstances that justify transmission. Transmission that merely produces that equivalent of a written statement ordinarily should not be used.

Safeguards must be adopted that ensure accurate identification of the witness and that protect against influence by persons present with the witness. Accurate transmission likewise must be assured.

Other safeguards should be employed to ensure that advance notice is given to all parties of foreseeable circumstances that may lead the proponent to offer testimony by transmission. Advance notice is important to protect the opportunity to argue for attendance of the witness at trial. Advance notice also ensures an opportunity to depose the witness, and perhaps by video record, as a means of supplementing transmitted testimony.

■ The analogous Federal Rule of Criminal Procedure was not amended in the same way. *Compare* Fed.R.Crim.P. 26 and Fed.R.Civ.P. 43. That circumstance does not preclude the use of contemporaneous televised examinations of witnesses in federal criminal cases. Prior to the 1996 amendment to civil Rule 43, a court's need to seek the truth, to efficiently conduct a trial, and to ensure that persons with important information relating to the case be heard, permitted a court to interpret the Federal Criminal Rules in ways that justice mandates. *See generally,* Fed.R.Crim.P. 2. Under its inherent power it could have ordered the form of testimony by television required in the instant case. *Cf., United States v. Hasting,* 461 U.S. 499, 505–06, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) ("federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or Congress"). Since the Rules of Criminal Procedure do not speak specifically to this matter, a court conducting a criminal case is permitted to draw from and mirror a practice that is sanctioned by the Federal Rules of Civil Procedure. Fed.R.Crim.P. 57 ("a judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district" where there is no controlling law on an issue).

Amended civil Rule 43 expresses power that existed under prior law. It cannot be construed as a limitation on the previous inherent power of the courts in criminal cases that continues under the Federal Rules of Criminal Procedure. Rule 2 of the Federal Rules of Criminal Procedure requires district courts to construct the Rules to provide "fairness in administration and the elimination of unjustifiable expense and delay" in criminal proceedings. Television procedures for providing testimony in exceptional cases is essential if the policy expressed in criminal Rule 2 is to vindicated. *Cf., Harrell v. State,* 689 So.2d 400 (Fla.Dist.Ct.App.1997) ("satellite testimony enhances the efficiency of our legal system" in case where Argentinian residents testified as witnesses in a Florida criminal trial).

Prior to amendment of the civil Rule federal trial courts have repeatedly, in civil cases, taken testimony by telephone and closed circuit television. The jury has never had any difficulty in evaluating such testimony. The court of appeals for the Second Circuit permits oral argument by television with counsel and the court separated geographically. There is increasing use in courts across the country of appearances by closed circuit television at arraignments to avoid the necessity of police and those arrested traveling to be before a magistrate. *See, e.g., id.* at 404 (audiovisual technologies are currently utilized in Florida during presentments and arraignments in criminal cases).

■ In this case the government has been able to make the threshold showing entitling it to a deposition. *See Donaldson,* 978 F.2d 381, 392–93 (7th Cir.1992). Nevertheless, deposing the witness is not appropriate. First, the deposition rule requires the requesting party to notify all parties of its intention to depose the witness, to provide them with the name and address of the witness, and to

disclose the location of the deposition site. Fed.R.Crim.P. 15(b). Disseminating the address of the witness in this case or his whereabouts would be dangerous. Second, a defendant generally has the right to be present with his attorneys at a deposition. Fed. R.Crim.P. 15(b). Defendant concedes that his own purported poor health precludes his traveling to the deposition and he prefers televised presentation of live testimony to a deposition. Receiving contemporaneous testimony via closed circuit televising affords greater protection of his confrontation rights than would a deposition.

It is desirable that the defendant be permitted, if he wishes, to face the witness directly so that each sees the other and the jury sees both while the testimony is being given. The televising arrangements made by the government provide this full confrontation since the witness sees and hears the defendant while the defendant sees and hears the witness. The jury, court, and counsel simultaneously see both. In short, the arrangements proposed by the government in this case satisfy fully the requirements of the Constitution and the Federal Rules of Criminal Procedure.

The process will be memorialized by a sealed video tape recording for purposes of any appeal. The video tape may not be released to the media. *See* Fed.R.Crim.P.53 (broadcasting from courtroom in criminal trial not permitted); *cf., Hamilton v. Accu-Tek,* 942 F.Supp. 136 (E.D.N.Y.1996) (broadcasting in civil case permitted). Any reading back of testimony requested by the jury during its deliberations will be from the court reporter's transcript; use of the video tape recording for this purpose might result in evaluating this testimony differently from other testimony taken in open court.

Nicholas Turner is appointed Special Master to accompany one attorney representative of the defendant and one of the government to the place where the witness will appear. None of them will reveal this place to anyone. The government will furnish transportation. Other terms of the accompanying order follow the court's oral instructions.

So ordered.

## ORDER

**UPON AN APPLICATION BY THE GOVERNMENT,** to present at this trial the testimony of Government witness Peter Savino by closed-circuit television, due to his physical illness, and upon having conducted an evidentiary hearing related to that issue on July 16, 1997, and upon having found that the Government has sustained its burden of proof in establishing the propriety of such a procedure, and the defendant having declined a Rule 15 deposition;

**IT IS HEREBY ORDERED,** that Savino shall be permitted to testify by closed-circuit television from an undisclosed location known also to the Government, to Philip F. Foglia, Esq., to the Special Master, and to the United States Marshal Service, with the jury being advised that this procedure has been made necessary by Savino's physical infirmity; and

**IT IS FURTHER ORDERED,** that the examining attorneys, preferring to conduct their examinations from the courtroom within which this criminal case is now being tried, will do so; and

**IT IS FURTHER ORDERED,** that Savino's testimony shall be preserved by the official court reporter and by videotape, with the court reporter's stenographic transcript to be used for any requested readback by the jury during its deliberations, and the written transcript and videotape will be available for appellate review; and

**IT IS FURTHER ORDERED,** that the videotape recording of Savino's testimony shall be maintained by this Court under seal; and

**IT IS FURTHER ORDERED,** that this Court's clerk, Nicholas R. Turner, is hereby appointed Special Master, with a direction to attend the witness's testimony at the undisclosed location for the purpose of assuring the integrity of the procedure; and

**IT IS FURTHER ORDERED,** that one Assistant United States Attorney and one of defendant's counsel, Philip F. Foglia, Esq., shall be permitted to be present at the site from which Savino will be testifying for the purpose of assuring that the procedures employed are in accordance with the requirements of this Court and the defendant's right

**760**

to confrontation, due process, and a fair trial; and that both counsel shall travel at the expense of the Government, which shall also provide for food and housing; and

**IT IS FURTHER ORDERED**, that Mr. Foglia shall not reveal at any time whatsoever the location from which Savino will testify, unless required to make disclosure by an order of this Court; and

**IT IS FURTHER ORDERED**, that Mr. Foglia is permitted to telephone the Court or the Marshal's Service at any time so that messages can be transmitted to or from his family or others; and

**IT IS FURTHER ORDERED**, that the Marshal's Service is directed, if possible, and if consistent with the needs of the Federal Witness Protection Program, to make available a patched telephone line so that Mr. Foglia may speak with his wife and children; and

**IT IS FURTHER ORDERED**, that it will be a violation of this Court's Order for anyone, other than the persons designated, to attempt to ascertain the location of the site from which Savino will testify; and

**IT IS FURTHER ORDERED**, that the role of the Government attorney and defense counsel is solely to observe the proceedings as they occur, and to make known any objections to the Special Master, who is empowered to take whatever lawful steps are necessary to lawfully expedite these proceedings.