**Michael S. EDWARDS, Plaintiff,**

v.

**Keen Mountain Correctional Officer LOGAN, et al., Defendants.**

**Civil Action No. 97–0066–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Jan. 28, 1999.

---

Michael S. Edwards, Las Cruces, NM, pro se.

Donald Wise Huffman, Huffman & Haig, P.C., Roanoke, VA, Martha Murphey Parrish, Office of Atty. Gen., Richmond, VA, Anisa P. Kelley, Fiscella, Kelley & Mooney, Richmond, VA, for defendants.

## OPINION AND ORDER

JONES, District Judge.

The question before the court is whether a jury trial in a suit brought by a state prisoner under 42 U.S.C.A. § 1983 should be conducted through interactive video conferencing by which the plaintiff would remain confined in New Mexico while simultaneously participating in the trial held in this district. For security and expense reasons, I accept the state's request to hold the trial through video conferencing and direct the defendants to provide the necessary logistical assistance to set up the trial.

### I. Background.

Michael S. Edwards, a state prisoner, filed suit against certain state prison officials and officers employed at the Keen Mountain Correctional Center, located in Buchanan County, Virginia, where Edwards was confined. In the suit, filed pursuant to 42 U.S.C.A. § 1983 (West 1994 & Supp.1998), he seeks money damages and has demanded a jury trial. On July 7, 1998, this court dismissed certain of Edwards' claims and a number of the defendants, but retained for trial an excessive force claim filed against correctional officers Buchanan, Honaker, and Turner, and former officer Hibbits. In the meantime, Edwards had been transferred from Virginia to New Mexico to serve the remainder of his sentence, pursuant to an agreement between the states.[1]

---

1. Edwards is currently serving sentences totaling 32 years for convictions of rape, sodomy, and arson. Edwards was transferred to New Mexico for confinement on October 15, 1997, due to his "extensive enemy situation throughout the [Virginia Department of Cor-

I thereafter directed the parties to file statements of their positions as to the plaintiff's attendance at trial in light of the Fourth Circuit's decision in *Muhammad v. Warden, Baltimore City Jail,* 849 F.2d 107, 111–12 (4th Cir.1988) (holding that a plaintiff inmate in a section 1983 action had no absolute right to be present at his jury trial). Defendants Buchanan, Turner, and Honaker responded by moving that the costs of transportation be borne by the plaintiff, submitting affidavits estimating that the cost of transporting Edwards from New Mexico to Virginia for trial, including appropriate security, would be $8,652, and recommending that the court consider conducting the trial through video conferencing. Edwards responded that he had no funds to pay for such transportation and requested that the state be directed to produce him at its expense. Following receipt of the responses, I directed the defendants to further explore the possible use of interactive video.

Defendants Buchanan, Turner, and Honaker submitted a memorandum in support of conducting the trial through interactive video on November 5, 1998. I allowed Edwards and defendant Hibbits to respond to this proposal by November 29, 1998. Hibbits responded with his concurrence to his co-defendants' proposal on November 12, 1998. To date, Edwards has not responded.

Accordingly, the issue is ripe for decision.

## II. Analysis.

Throughout the country, courts are beginning to use video conferencing to conduct judicial business. A recent news article reported the increased use of video conferencing in the federal courts of appeal, district courts, and bankruptcy courts. *Video Conferencing Links Feder-*

al *Courts and Public,* The Third Branch (Admin.Office, U.S.Courts, Wash., D.C.) June 1998, at 6–7. A subsequent article recounted the support video conferencing has received from judges and attorneys who note that it not only saves time and money, but also enhances security by reducing the need to move prisoner participants for hearings. *Courtroom Technology Draws Positive Response,* The Third Branch, *supra,* August 1998, at 9.

While video conferencing has promise, its use in the federal courts has been limited and there are few established boundaries on when video conferencing can be employed as an alternative to physical presence in the courtroom. The federal rules allow the use of video conferencing or comparable technology to present witness testimony, but do not expressly permit or restrict a court's ability to conduct an entire civil trial through video conferencing. *See* Fed.R.Civ.P. 43(a) ("The court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location.").

In criminal cases, video conferencing technology has been upheld as an alternative means of taking witness testimony. *See Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990) (holding that closed circuit television constitutionally permitted for taking testimony of a child witness); *United States v. McDougal,* 934 F.Supp. 296 (E.D.Ark.1996) (holding that exceptional circumstances justified the taking of the President's testimony through the use of a deposition by video conferencing). The Ninth Circuit held, however, that an arraignment may not be held through interactive video because the Federal Rules of Criminal Procedure require the defendant's actual presence. *See Va-*

rections] and the lack of viable housing assignment for him in Virginia." (Defendants.' Resp., Aug. 25, 1998, Ex. B, Aff. of R.C. Nixon.) Edwards denies that his transfer to New Mexico was voluntary, but agrees that he desired transfer to another state "near Virgi-

nia." (Pl.'s Resp., Aug. 14, 1998.) The states frequently transfer prisoners pursuant to interstate compacts, for reasons of overcrowding or particular inmate needs. *See Olin v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983).

*lenzuela–Gonzalez v. United States Dist. Court,* 915 F.2d 1276, 1280 (9th Cir.1990). In contrast, one district court found that a sentencing hearing might be conducted through video conferencing because the technology enabled the defendant to be "present" at the hearing although he was not physically in the courtroom. *See United States v. Edmondson,* 10 F.Supp.2d 651, 653 (E.D.Tex.1998).[2]

A significant case examining the use of video conferencing in a civil matter is *United States v. Baker,* 45 F.3d 837 (4th Cir.1995). In that case, the Fourth Circuit upheld a decision to conduct a mental competency hearing through video conferencing as part of a pilot program sponsored by the Judicial Conference of the United States. Central to this conclusion was the determination that the commitment hearing was civil in nature and the Sixth Amendment right to confrontation did not apply. Although due process guaranteed certain protections to civil commitment respondents, the Fourth Circuit found that the use of video conferencing did not violate the defendant's procedural due process rights. *Id.* at 843–44. The court also noted that video conferencing did not "preclude the respondent from confronting and conducting relevant cross-examination of the witnesses . . . [and allowed] for the respondent's 'presence' at least in some sense, at the commitment hearing." *Id.*

The use of video conferencing in judicial proceedings was further enhanced with the enactment of the Prison Litigation Reform Act of 1996. Included in this legislation was a provision requiring courts to make greater use of video conferencing technology in adjudicating prisoner litigation. This statute specifically provides:

> To the extent practicable, in any action brought with respect to prison conditions in Federal court pursuant to section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility, pretrial proceedings in which the prisoner's participation is required or permitted shall be conducted by telephone, video conference, or other telecommunications technology without removing the prisoner from the facility in which the prisoner is confined.

42 U.S.C.A. § 1997e(f)(1) (Supp.1998).

Although this provision only requires video conferencing in pretrial prisoner litigation proceedings, there is no reason to believe Congress intended to prohibit the use of video conferencing to conduct the trial of a prisoner's suit. The clear intent of this legislation was to reduce the cost and administrative burdens associated with prisoner litigation.[3] As part of this overall effort, video conferencing was required, to the extent practicable, for all pretrial prisoner litigation proceedings. A reasonable conclusion one can draw from this statute is that Congress sought to encourage the use of video conferencing and did not seek to restrict the universe in which this technology may be employed.

■ The above cases and the enactment of the Prisoner Litigation Reform Act are illustrative of the growing accep-

---

**2.** The question of whether a defendant participating in a criminal proceeding is "present" is important because a criminal defendant's presence is required, except in some circumstances, at every stage of the prosecution. *See* Fed.R.Crim.P. 43. The Federal Rules of Civil Procedure do not require a party's presence at trial.

**3.** The Prisoner Litigation Reform Act of 1995 was introduced by Senators Dole, Kyl, and Hatch on May 25, 1995. The bill, however, was not reported out of committee, but rather was enacted as part of the larger Omnibus Consolidated Recissions and Appropriations Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321 (1996). Accordingly, there is no committee report or floor debate to help interpret the legislative intent of this provision. Instead, the court must rely on the statements of those Senators who submitted statements for the record when the original legislation was introduced. While those statements may encapsulate the general intent behind the legislation, they did not address each specific provision and did not mention the video conferencing requirement.

tance of video conferencing as an alternative in judicial proceedings, and they provide guidance in addressing the issue at hand. Although the ideal situation would be to ensure the plaintiff's physical presence at his own trial, if securing the prisoner's presence, at his own or public expense, is determined to be infeasible, other reasonably available alternatives should be considered. *See Muhammad v. Warden, Baltimore City Jail,* 849 F.2d at 111, 113. In deciding which alternative to follow, the Fourth Circuit has directed that the court should consider, at a minimum, the following factors:

(1) Whether the prisoner's presence will substantially further the resolution of the case, and whether alternative ways of proceeding, such as trial on depositions, offer an acceptable alternative[;]

(2) The expense and potential security risk entailed in transporting and holding the prisoner in custody for the duration of the trial[; and]

(3) The likelihood that a stay pending the prisoner's release will prejudice his opportunity to present his claim, or the defendant's right to a speedy resolution of the claim.

*Id.* at 113.

■ Taking these factors in turn, the first—and most important—question is whether video conferencing is an "acceptable alternative" to Edwards' physical presence at trial. Video conferencing permits the simultaneous transmission of audio and video images, so that all participants are able to hear and see each other at the same time. Of course, it is not the same as actual presence, and it is to be expected that the ability to observe demeanor, central to the fact-finding process, may be lessened in a particular case by video conferencing. This may be particularly detrimental where it is a party to the case who is participating by video conferencing, since personal impression may be a crucial factor in persuasion. *See United States v. Baker,* 45 F.3d at 850 (Widener, J., dissenting).

For these reasons, video conferencing is likely not an acceptable alternative in every case. Here, however, the issue in dispute (whether the defendants forced the plaintiff to engage in a fistfight with a guard) is relatively simple and straightforward and I anticipate no difficulty in the effective presentation of all of the facts and contentions through video conferencing.

The second factor that the court must consider is the expense and security concerns associated with physically bringing Edwards to trial. There is no question that the cost of bringing Edwards to trial in Virginia, estimated to be $8,652, is substantial as compared with the cost of video conferencing. Holding Edwards' trial through video conferencing would only require transporting Edwards to a federal courthouse in New Mexico, and electronically linking Edwards with the courthouse in Roanoke, Virginia, thus alleviating much of the cost and considerable security risks.

The final question that must be addressed is whether a stay of the proceeding, pending Edwards' release, presents a viable alternative to conducting the trial while Edwards is in custody. A stay of this action is not practicable because Edwards, although currently eligible for discretionary parole, is not scheduled to be released until August 30, 2008. Staying Edwards' trial for up to ten years would clearly prejudice his claim.

■ If, after balancing the factors set forth in *Muhammad,* the court finds that the costs and security concerns posed by the trial are too great, the court has the discretion to try the case without the plaintiff's attendance. *See Muhammad,* 849 F.2d at 111. Such a stark alternative, however, is not necessary if the technology is available to give the plaintiff his day in court while minimizing costs and security concerns. With video conferencing, Edwards will be virtually present at his trial and will have the ability to confront wit-

nesses, address the jury, and participate fully.[4]

### III. Conclusion.

For the foregoing reasons, it is **ORDERED** that the request that Edwards' trial be conducted through video· conferencing is approved and the defendants are directed to provide the necessary logistical assistance to set up the trial.

4. Edwards has indicated that he desires the attendance as a witness of another former Virginia inmate, who is now in Massachusetts. I need not decide at this point, however, whether I will allow this witness to testify by video conferencing. A sworn written statement may be sufficient.